UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 21-cr-00374-APM-1 |
| | ) | |
| v. | ) | |
| | ) | |
| LOGAN GROVER, | ) | |
| | ) | |

**SENTENCING MEMORANDUM IN SUPPORT OF MR. GROVER**

Logan Grover, by and through counsel, Megan M. Downing of Recht Kornfeld, P.C., and pursuant to 18 U.S.C. § 3553(a), respectfully requests this Court to impose a probation sentence. In support of this request, Mr. Grover provides the following information for consideration:

**I.      Introduction**

On July 20, 2022, Mr. Grover entered a guilty plea to Count Four of the Information charging him with Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 510(e)(2)(G) (ECF No. 1). The facts underlying the offense are set forth in detail in both the Statement of Offense (ECF No. 60) and the Presentence Investigation Report (PSR) (ECF No. 63). Consistent with the Plea Agreement (ECF No. 59, p. 1, 2) and PSR (ECF No. 63, p. 8), the Parties agree that the maximum sentence is six (6) months' imprisonment and probation is available. The Parties further agree that the U.S. Sentencing Guidelines do not apply. (ECF No. 63, p. 8).  The Parties understand that the sentence in this case will be determined in accordance with 18 U.S.C. § 3553(a).

For the reasons set forth below, the facts and circumstances of this case warrant a probation sentence. A sentence of probation is sufficient, but not greater than necessary, because Mr. Grover is extremely remorseful for his conduct, has no criminal history, and presents no threat to the community. Based upon his history and characteristics and the other sentencing factors as applied to Mr. Grover, a sentence of incarceration would be greater than necessary to accomplish the purposes of sentencing. Accordingly, Mr. Grover respectfully asks the Court to impose the sentence recommended by the PSR—24 months of probation to be supervised in the state of Colorado.

II.     The Factors Under 18 U.S.C. § 3553

A.  The History and Characteristics of Mr. Grover

Pursuant to 18 U.S.C. § 3553(a)(1), the Court must consider the Defendant's "history and characteristics" in fashioning an appropriate sentence. Mr. Grover, as a person, is exceptional. This case stands in stark contrast with his values and his history of leading a law-abiding life in service to others.

1.  Education and Work life

His entire life, Mr. Grover has worked to excel academically and professionally. As a high school junior, Mr. Grover competed for and won an U.S. Army, Reserve Officer Training Corps scholarship. (ECF No. 63, p. 12). Mr. Grover left his home state of Colorado and used his scholarship to attend Texas Christian University in Fort Worth, Texas where he earned a Bachelor of Science degree. (ECF. No. 63, p. 12).  Mr. Grover's family includes several role models who valued service to the United States as members of the armed forces. Both his grandfathers served World War II and his father enlisted and served in Vietnam. His family instilled in Mr. Grover a respect for service to country. Mr. Grover was drawn to the challenge of

leadership and went on to serve as a Combat Engineer officer in the United States Army. (ECF. No. 63, p. 12).

After completing his four years of U.S. Army active duty service time, Mr. Grover returned to university to earn an International Master of Business Administration (IMBA) degree from the University of Denver. (ECF. No. 63, p. 12). After four years of working in leadership roles overseas as the Winter Site Manager for the South Pole Station, Antarctica, Counter Insurgency Training, Project Manager on the Iraq/Kuwait border; and Counter IED/UXO Program Manager with five sites across Afghanistan, Mr. Grover once again returned to university to earn a Juris Doctor degree from the University of Montana School of Law. (ECF. No. 62, p. 12). Mr. Grover had been interested in law school since his undergraduate studies. But the attacks of 9/11 compelled him to enter active duty instead of accepting an education deferment from the Army to pursue a graduate education immediately after college.

Mr. Grover is smart and hardworking. He pursued and financed educational opportunities throughout his adult life to develop additional career paths after serving as an officer in the United States Army and working overseas as a civilian.

Following his service, work, and commitment to education, in 2007 Mr. Grover established his own real estate business in Denver, Colorado. His interest in the law grew into a passion for real estate. During law school, Mr. Grover purchased, renovated, and sold his first residential property. From that formative real-estate-law-school experience, he founded and grew a successful real estate company.

### 2. Volunteer Activities

Mr. Grover has demonstrated a long record of service to various communities.[1] While still in college, Mr. Grover discovered opportunities to travel and explore new places and cultures, while also providing support and helping build them. In 1998, as a college sophomore, Mr. Grover traveled to Honduras, to rebuild a bridge destroyed by the severe flooding from Hurricane Mitch, which had cut off the village of Reitoca from the capitol of Tegucigalpa. The following year, Mr. Grover traveled to Sao Paulo, Brazil to volunteer with the Monte Azul organization to support the orphaned children of the Sao Paulo 'favelas'. He collaborated with Monte Azul to create a self-sustaining sourcing/teaching/training/producing cycle, using discarded televisions, kitchen appliances, computers, phones, etc. In 2002, after his deployment to Kosovo, Mr. Grover used his 'block leave' time to travel to Tanzania, Africa to volunteer with the Christians for Peace organization to support educational goals for local children with special needs in the village of Moshi, at the base of Mt. Kilimanjaro. In 2005, after his deployment to Iraq, Mr. Grover traveled to the Golan Heights, Israel where he worked with local families to develop a greater, peaceful dialogue among the groups. After completing his U.S. Army active duty service time in 2006 and before he began his IMBA studies, Mr. Grover traveled to Xi'an, China to volunteer with the New Hope organization, teaching English to local families. During his IMBA studies, in 2007, Mr. Grover traveled to Trujillo, Peru to volunteer with the Workaway organization, caring for and teaching English to orphaned and & special needs children. Mr. Grover enjoys serving those in need, meeting people around the world, and immersing himself into exploring new regions and cultures. Following this initial volunteer experience in college, Mr. Grover went on as a young adult to seek out volunteer opportunities in many countries

---

[1] Mr. Grover is compiling photographic or other corroborative support for his volunteer activities to supplement this submission at or in advance of sentencing.

including, the aforementioned countries to include Tanzania, China, Brazil, Japan and Vietnam. In every one of these instances and across different cultures and continents, he helped people.

### 3. Military Service

As an officer in the United States Army on active duty for four years after he graduated from college, Mr. Grover established himself as a hard worker and a leader. He served as a combat engineer, serving in Germany, Kosovo (as a platoon leader for peacekeeping operations), Iraq (as a platoon leader and regiment engineer), and Bosnia (as a special project officer). Mr. Grover was discharged honorably and was a remarkable soldier and officer. His list of miliary distinctions and honors is noteworthy and include three and a half years of being stationed overseas and three deployments. He earned 21 separate medals and citations for service, duty, and leadership, including but not limited to:

a. Combat Action Badge, 2005: One of the first officers in Army to receive award for documented multiple and sustained direct fire combat with enemy forces;

b. Bronze Star, 2004: Awarded for service during 12-month deployment to Iraq; including: Platoon Leader, Regiment Engineer, Executive Officer for war fighting operations; including Improvised Explosive Device (IED) response, route clearance, combat patrols, enemy 'bomb maker' capture or kill operations, enemy ambush and counter ambush operations, counter insurgency tactical/operational/strategic operations;

c. Army Commendation Medal, 2006: Awarded for exceptional service during 4 year overseas station, 3 deployments, as platoon leader, executive officer, special project officer;

d. 2005: Successfully led (Unexploded Ordinance) UXO site clearance; including: design & build flight line and air control tower UXO shield, develop plan to drain

    UXO contaminated swamp adjacent to flight line, lead and manage Bosnian mine clearance teams, certify site cleared and safe to build consolidated U.S. air operations;

 e. 2004: Led only mission to successfully clear Iraqi Republican Guard buried ordinance/UXO cache, with no fatalities, while employing Iraqi civilian labor, securing their transportation, site security, developed site clearance and verification protocols that were adopted Army-wide for use at other sites throughout the Iraqi theatre of operations.

As an army officer veteran, a person who profoundly respects law enforcement and the law, and as someone who fought to protect the ideals of democracy as a member of the United States Army, Mr. Grover is exceedingly remorseful for his actions which resulted in the present criminal charge. He intends to express his accountability during the sentencing hearing in this case and he has taken responsibility for his actions by pleading guilty.

### 4. Family Life

Mr. Grover, above all else, is a husband and a father. Mr. Grover has two young children, with whom he is very close. Both of his children, for specific special needs, rely on him as part of their daily lives.

Mr. Grover has been very remorseful about his actions and feels sincere regret. He also regrets the harm he has caused his family. While he has a wide network of family support, due to his personal accountability for his actions, he has not at this time solicited letters of support or involved family members in this case. He is accepting of consequences. At the same time, he is also deeply concerned about the effect his actions have had on his family and the injury that will be caused if removed from them for any length of time.

### B. The Nature and Circumstances of the Offense

Pursuant to 18 U.S.C. § 3553(a)(1), the Court must also consider the "nature and circumstances" of the convicted offense. Mr. Grover agrees with the facts as stipulated by the Statement of Offense submitted to the Court. Mr. Grover travelled to Washington, D.C. on January 4, 2021 to attend President Trump's "Stop the Steal" rally. His intent was to peacefully assemble to protest the certification of the Electoral College vote. He had never before attended a rally or protest. Mr. Grover did *not* travel to Washington D.C. planning or intending to participate in an attack on the United States Capitol.

Mr. Grover posted a message on Facebook explaining that he had travelled to Washington D.C. to attend a rally and protest. The full content of the message is contained in the Criminal Complaint (ECF No. 1, p. 2). Mr. Grover stated, "I have no interest in violence. Sadly, I recognize that violence is highly likely." (Id.) For context, it is important to explain that Mr. Grover was referencing his fear that the protestors would be attacked by opposing groups. He brought with him protective clothing in the event he was attacked that evening, after the rally and protest. After the tragic and destructive events at the capitol that day, Mr. Grover did not go outside that evening and therefore did not use the protective clothing. He had no interest in inciting violence, nor did he.

As planned, he attended the rally. He did so peacefully. He later returned to his hotel room. Shortly thereafter, Mr. Grover saw news reports of the events occurring at the U.S. Capitol. He then, regrettably, walked from the hotel to the Capitol. Mr. Grover was in utter disbelief at the surreal scene he was witnessing. There had been no violence at the earlier rally. He recognizes that there is absolutely no good reason, excuse, or justification to join the crowd of people who had amassed at the Capitol. All he wanted to do was see what was occurring for himself. He did not walk to the Capitol to cause destruction or to threaten anyone. He did not go to the Capitol to participate in any form of riot. To his sincere regret, Mr. Grover became party to

events that he absolutely condemns. He made the decision, albeit the wrong one, to leave his hotel room and go investigate what was occurring.

When Mr. Grover arrived at the Capitol grounds, he observed a massive crowd amassed. The signage and barricades he observed while touring the day prior had been knocked down. Mr. Grover does not posit to the Court that his presence was, as a result, permissible. In this very dynamic moment, it was not immediately clear to him what was restricted or the circumstances of why the signage and fencing was no longer present. Mr. Grover had not observed the crowd overcome the barriers. He recognizes fully that his presence was unauthorized. He takes responsibility for not recognizing that immediately in the moment and disregarding the ample indication unfolding around him that what was occurring was unlawful. Without hesitation, he understands that, based upon the circumstances, it was very clear that he was not allowed beyond the areas he had previously observed as restricted. He deeply regrets that he continued to closer proximity.

Mr. Grover observed people who had proceeded beyond the restricted area as designated the prior day, onto the exterior staircases and around the doors to the interior of the building. Mr. Grover found the scene to be surreal. He continued closer, intent on observing what was occurring. He does not posit that this was in any way justified. Rather, in hindsight, he regrets his decision to join the many whose presence was completely unauthorized. He wanted to understand what was happening and regrets that he did not immediately realize that his presence was not only unlawful but contributed to a growing mass which threatened the security of the Capitol building and those inside. Mr. Grover proceeded up an exterior staircase and near one of the entrances. He did not intend to enter the building. When the crowd surged, he was pushed along with the crowd through a doorway into the interior of the building. After regaining his composure after nearly being knocked over as he was pushed from behind, he continued onward, toward the

rotunda, where he and others were met by officers. After several minutes and waiting to exit, he readily complied with police officer requests to leave the building. Much of the time he remained inside the building was simply waiting in line to exit.

While Mr. Grover takes responsibility for proceeding onto restricted exterior grounds, disregarding the many signals that his presence was unauthorized, upon entering the Capitol, Mr. Grover realized immediately and acutely that his presence was unlawful. He could smell the remnants of pepper spray in the air. He could see police officers desperately trying to halt the surging crowd. He heard people yelling in a threatening manner. He also recognizes that, notwithstanding the surge of the crowd which pushed him forward, he was not authorized to be where he had been previously—the grounds, the stairs, and the exterior of the building. While he did not intend or plan to enter the capitol building, he nonetheless understands that the offense occurred prior to entry and that his entry was due to his own decision to position himself so close to the interior doorway.  While he provides this context for his actions, it is in no way intended to diminish his accountability or his regret and remorse. It simply was not ever his intent to hurt or threaten anyone, to damage property, or to contribute in any way to the developing riot. He should not have been there.

Mr. Grover understands the serious nature of this offense. He deeply regrets the decision he made to proceed to an area which was unauthorized and under the unprecedented gravity of these circumstances; while Mr. Grover travelled to Washington D.C. to participate in peacefully protesting the results of a process, he feels very strongly that he had no interest or desire to undermine the process itself. He truly believes and has expressed previously that the events of January 6, 2021 at the United States Capitol were tragic and counterproductive. He is remorseful and regrets being party to the very destructive, completely unnecessary, and deeply tragic events of that day. He deeply regrets his actions and accepts the consequences for this conduct.

### C. The Need for Just Punishment, to Protect the Public, and Promote Respect for the Law

The effects and consequences already suffered by Mr. Grover as the result of his conduct are significant. He accepts these consequences, which include his arrest and conviction of a federal offense. Mr. Grover lives and works in a small community of Erie, Colorado. The reputational damage resulting in the high-profile nature of the case and media attention it has garnered locally is undeniable.

Mr. Grover deeply regrets of his actions as he ultimately is a person who duly respects the laws of the United States. He has no prior criminal convictions. During the 18 months since his arrest, Mr. Grover has complied fully with pre-trial supervision and demonstrated his commitment to living a law-abiding and pro-social life.  Based upon his sincere contrition, Mr. Grover and his counsel respectfully argue that a prison sentence is unnecessary in this case.

### III. Sentencing Requests

Mr. Grover respectfully asks that the Court impose the sentence recommended by the probation officer. While he has the ability to pay a fine, he further respectfully asks that the Court not impose a fine given the stipulation to restitution.

Counsel has reviewed available general data related to defendants sentenced on a conviction to 40 U.S.C. § 5104(e)(2)(G) in relation to the events of January 6. It appears that the majority of similarly convicted defendants have received a probationary sentence, many with a condition of in-home detention, community service, or incarceration. Counsel avers that Mr. Grover's case—one without damage to property, threats to others, yelling or inciting violence—is likely consistent with those who have received probation without incarceration. The PSR does not recommend jail time for Mr. Grover.

### IV. Conclusion

Mr. Grover has consistently stated and demonstrated his remorse and his accountability for the offense he committed. He is a 44-year-old man with no criminal conviction history, who has built a life working hard, succeeding academically and professionally, serving his country in the United States Army, and helping others. This experience has been severely damaging to him personally. He makes no excuse for his actions and has been consistent in his contrition. The objectives of 18 U.S.C. 3553(a) are met with the probation sentence requested—the requested sentence will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment. A probation sentence will adequately deter criminal conduct and protect the public from further crimes of the defendant.

WHEREFORE, considering all the relevant factors enumerated by 18 U.S.C. § 3553(a), Mr. Grover respectfully requests that the Court impose a sentence of two years of probation.


Respectfully submitted,

**RECHT KORNFELD, P.C.**


*s/ Megan M. Downing*
MEGAN M. DOWNING
Attorney for Defendant Logan Grover
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
(303) 446-9400 (fax)
megan@rklawpc.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 22nd day of Nov., 2022, I electronically filed the foregoing **Sentencing Memorandum in Support of Mr. Grover** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.


*s/ Erin Holweger*