**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Case No. 1:21-cr-00374 (APM)** |
| **v.** | ) | |
| | ) | |
| **LOGAN GROVER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MR. GROVER'S REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM**

Logan Grover, by and through counsel, Megan M. Downing of Recht Kornfeld, P.C., herein replies to the government's Sentencing Memorandum:

## I. Introduction

The government requests 45 days of imprisonment in this matter in conjunction with probation and community service. (ECF No. 65, p. 1). The government relies upon the need for specific deterrence, arguing that "a term of incarceration is necessary to drive home to [Mr. Grover] that his conduct cannot be repeated." (ECF No. 65, p. 25). The government states that Mr. Grover failed to take responsibility for and misrepresented his conduct when he spoke to FBI agents, and that he was involved in a "brief scuffling" with police. (ECF No. 65, p. 14).

Mr. Grover and counsel respectfully urge the Court that incarceration in this case is not necessary. By pleading guilty, Mr. Grover has taken responsibility for his actions. He regrets that his statements to the FBI were interpreted as minimizing his responsibility. That was not his intent. He further states that while he understands the issues the government takes with his interview, he did not misrepresent his conduct. He cooperated with a required interview in good faith. There is no risk that he will repeat his conduct.

## II. Mr. Grover Takes Full and Complete Responsibility for his Conduct

The government states that "Mr. Grover's assertion that he did not intentionally

enter the Capitol is belied by the Statement of Offense in support of his plea agreement, which he signed, and in which he admitted that "he willfully and knowingly entered the U.S. Capitol Building, knowing that he did not have permission to do so." (ECF No. 60, p. 5).

By stating that he did not intentionally enter the Capitol, Mr. Grover described, from his perspective at the time, the circumstances which contributed to him doing so. He does not dispute that he did so knowingly and willfully. Video footage depicts Mr. Grover, as part of the crowd, being pushed from behind into the Capitol Building. (ECF No. 65, Figure 8.1). While not an excuse for his conduct, Mr. Grover did not misrepresent this when asked specifically by the FBI. The agents asked him *why* he went inside the Capitol. (ECF No. 65, p 19). The plea agreement compels him to respond. "Why" he went inside the Capitol is neither an element of the offense or a defense. But, at his peril, he provided his perspective. Consistent with the Statement of Offense, Mr. Grover "entered with a crowd of people that pushed past these officers." (ECF No. 60, p. 4). He stood outside observing, until the crowd began pushing. Mr. Grover was pushed forward and nearly fell as he came through the door into the Rotunda vestibule. (ECF No. 65, Figure 8.1). He does not, and has never, believed or asserted that the circumstances of his entry—the fact that he was pushed—excuses or mitigates his conduct. To the contrary, he admits that he moved with the crowd willfully and knowingly, as the result of where he had positioned himself. To be sure, Mr. Grover walked to and climbed the stairs which led to a landing outside the Capitol Rotunda. (ECF No. 60, p. 4). His trespass onto restricted grounds was complete prior to entering the building. He was standing inside the doorway while a man was yelling at people to go inside. (ECF No. 65, p. 19). He did not go inside until the crowd began pushing, which prompted him to move forward. And as the government correctly asserts, Mr. Grover did not "stop and wait in the vestibule area for police officers to let him go outside." (ECF No. 65, p. 19). He continued forward. He did not at the time, from his perspective on the

ground as opposed to the aerial camera view, perceive that he could immediately return the opposite direction of the pushing crowd to immediately exit. He admits all this unlawful conduct and regrets the wording he used to describe his actions when asked for additional detail by the FBI. His use of the word "intentional" was not meant to deny his culpability. Once the crowd began pushing, he moved with it, albeit not by his desire or plan, while previously observing and remaining on the exterior.

While the government further contends that Mr. Grover's "claim that he attempted to leave as soon as he was inside the Capitol, [is] not supported," (*Id*.) His perception at the time was that the only way to avoid the oncoming crowd was to move forward. Video evidence depicts walls of the crowd on either side of Mr. Grover. (*Id.*) It was not apparent to him that he could go back the direction the crowd had pushed him. In hindsight, he regrets not doing so immediately. Much of the recorded surveillance of Mr. Grover inside the Capitol depicts him standing peacefully in the same direction as officers, not pushing further into the Capitol, but rather waiting to exit. (*See* Exhibit G, Figure 1). When requested by an officer to leave, he complied.

Mr. Grover's statements to the FBI resulted from a post-plea interview required by the plea agreement. (ECF No. 59, p. 2). Mr. Grover cooperated with this requirement in good faith. Mr. Grover understands that there is evidence to contradict his understanding of what was occurring at the time and that the government disputes his stated beliefs. But he was not untruthful. He answered the agents' questions from his perspective *at the time of the offense*—what he has only described as a surreal moment, when he utterly failed to immediately perceive the problematic nature of his trespass onto Capitol grounds. All of the signage from the previous day was down, and Mr. Grover had not been present when it was knocked down or removed. He understands how problematic it is that he disregarded it. In describing his failings, Mr. Grover

did not intend the statements to the FBI to undermine his plea or to be transmitted to the Court for this purpose. Mr. Grover did not provide this context to the FBI during the investigation to seek to excuse his conduct, he did not provide it in his Sentencing Memoranda, his Statement of Offense, or as part of the pre-sentence investigation. He does not seek to justify his actions or undermine his accountability. Mr. Grover regrets his actions tremendously.

**III. Mr. Grover Complied with Police Commands**

The characterization that Mr. Grover "scuffled" with a police officer requires additional context. The only physical contact between Mr. Grover and a police officer occurred when a police officer physically engaged him after Mr. Grover followed the command of a separate officer and attempted to leave. Mr. Grover did not initiate any "scuffle" nor pose any threat of physical violence to any member of law enforcement. An officer directed Mr. Grover to leave. (*See* Exhibit G, Figure 4). On audio, Mr. Grover can be heard asking something to the effect of, "how do I do that," in response to the command. The officer guided him toward the wall and Mr. Grover complied. That is where he took the other officer by surprise, when he attempted to slide past the police line to leave. Mr. Grover kept his arms by his sides and pressed against the wall so as to not disturb the police line. When the second officer noticed him, he grabbed him to physically remove him. The initial officer who directed Mr. Grover appears to intervene.

To the contrary of assaulting or threatening police, Mr. Grover physically aligned himself with police. After rendering aid to an officer who was being pulled down by the crowd, he removed himself from the crowd and remained with the police. He stood in the police line, facing the direction of the crowd. (*See* Exhibit G, Figure 2). Corroborating his lack of intent to proceed further into the interior, he did not continue into the Rotunda when he had the opportunity to do so. He assisted police where he could to steady the line, as opposed to contributing to the push of the crowd. (*See* Exhibit G, Figure 3).

Mr. Grover's background, education, and training denotes just how chaotic a scene unfolded on Jan. 6, one in which an individual who respects the law could be swept up in the events of a surreal moment. Mr. Grover's military service demonstrates a person who has served with exemplary respect for authority and the law. More information to corroborate Mr. Grover's military distinctions and volunteer service are attached. (*See* Exhibits A-F). It is disheartening that the government believes Mr. Grover's military service and education merit additional grounds for imprisonment. Given his personal history and characteristics, even when swept up in this surreal moment, he did not destroy property. He did not yell at officers. He was not pushing, yelling, or chanting. He did not riot. He followed commands to exit when instructed to do so by an officer. As he has expressed, he believes the events at the Capitol were "tragic and counterproductive." (ECF 65, p. 20). For all of these reasons, his conduct is distinguishable from other cases cited by the government—while others pushed against officers, Mr. Grover calmly stood with them.

**IV. Conclusion**

Mr. Grover regrets that his required cooperation with the FBI has been interpreted to call into question his sincere contrition. He is further disheartened that his compliance with a specific command by an officer to leave has been unfairly presented as a "physical altercation" and in such a manner used to support a sentence of incarceration. (ECF 65, p. 29). Mr. Grover understands that his presence inside the Capitol was unlawful. He recognizes his failings in trespassing onto restricted property under the troubling circumstances at the time. He entered the Capitol as the result of his own decisions and actions. Imprisonment is not necessary to impress this upon him or to deter him. Notwithstanding this isolated conduct, Mr. Grover's entire life has demonstrated respect for the law and for law enforcement. His actions on January 6 were uncharacteristic and will not be repeated.

WHEREFORE, considering all the relevant factors enumerated by 18 U.S.C. § 3553(a), Mr. Grover respectfully requests that the Court impose a sentence of two years of probation.

Respectfully submitted,

**RECHT KORNFELD, P.C.**

*s/ Megan M. Downing*
MEGAN M. DOWNING
Attorney for Defendant Logan Grover
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
(303) 446-9400 (fax)
megan@rklawpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of Nov., 2022, I electronically filed the foregoing **Mr. Grover's Reply to Government's Sentencing Memorandum** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Erin Holweger*